UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:25-cv-25993

AT LAW AND IN ADMIRALTY

SHANNON D. CINELLI-BLONDIA,

      Plaintiff

v.

CARNIVAL CORPORATION,
d/b/a CARNIVAL CRUISE LINE

Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff, SHANNON D. CINELLI-BLONDIA, hereby sues the Defendant, CARNIVAL CORPORATION, d/b/a CARNIVAL CRUISE LINE, and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1.     This is an action seeking damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

2.     **THE PLAINTIFF**. The Plaintiff, SHANNON D. CINELLI-BLONDIA (hereinafter referred to as "Plaintiff" or "Cinelli-Blondia"), is *sui juris* and is a citizen of the United States of America and a citizen and resident of Big Rapids, Mecosta County, Michigan.

3.     **THE DEFENDANT – CARNIVAL CORPORATION.** The Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter referred to as "Carnival" or "Defendant" or "the cruise line"), is a citizen of the foreign nation of Panama, is

incorporated outside of the state of Florida in the country of Panama, but does business in the State of Florida, has its principal place of business in Miami, Florida, and at all times material hereto was and is doing business in Miami Dade County, Florida. At all times material hereto the Defendant owned and/or operated the cruise ship on which the subject negligence occurred

4. **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332 as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami-Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5. **VENUE AND PERSONAL JURISDICTION.** The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

    (a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

    (b) Had an office or agency in this state and/or county; and/or

    (c) Engaged in substantial activity within this state; and/or

    (d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6. **SPECIFIC PERSONAL JURISDICTION:** Alternatively, the Defendant is subject to specific personal jurisdiction in the Southern District of Florida. There is an adequate

link between this forum and these claims. This suit relates to and/or arises out of activities in this

forum or is related to the Defendant's contacts with this forum. See, e.g., *Ford Motor Co. v. Mt.*

*Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1038 (2021) and *Helicopteros Nacionales de Colombia,*

*S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

      7.     The Defendant's ships, which includes the *Carnival Vista,* regularly and

continuously enter United States waters including in Florida.

      8.     All conditions precedent for filing and maintaining this action have been fulfilled,

have been waived, or do not apply.

**OTHER ALLEGATIONS COMMON TO ALL COUNTS**

      9.     **DATE OF INCIDENT.** This incident occurred on January 17, 2025.

      10.     **LOCATION OF INCIDENT.** This incident occurred on the vessel *Carnival Vista,*

a ship in navigable water while the Plaintiff was a passenger aboard. Accordingly, the Plaintiff's

claims are governed by general maritime law. Specifically, the Plaintiff's incident occurred on the

Lido Deck on board the *Carnival Vista,* approximately 30-40 away from the pool and close to Guy's

Burgers.

      11.     **STATUS OF PLAINTIFF AS OF DATE AND TIME OF INCIDENT.** At all

times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and,

accordingly, was an invitee while on the vessel.

      12.     ***CARNIVAL VISTA* AND THE DANGEROUS CONDITION**. Carnival owns

and operates 27 cruise ships, which includes the *Carnival Vista*. Carnival's operations involve

attracting crowds to a central location and controlling and ensuring the safety of those crowds. On

each and every one of Carnival's ships including the *Carnival Vista* there is a Lido deck. The Lido

Deck features swimming pools, hot tubs, showers, lounge chairs, bars, dining, entertainment and

3

activities. The Lido Deck has an open deck which is exposed to the elements like rain and wind. The open deck portion of the Lido deck is where the swimming pools, hot tubs, and showers are located. The swimming pools, hot tubs, and showers open around 7:00am each day and there are passengers using these facilities at the time of opening. Passengers constantly and repetitively track water from these pools, spas and showers throughout the deck. There are also pool-side eateries for passengers to collect different types of foods and drinks, including the Blue Iguana Cantina and Guys Burgers Joint. Carnival allows passengers to eat the food from these eateries anywhere on the pool deck. Passengers traversing the open deck of the Lido Deck often drop and spill food and drinks on the floor. The buildup of the food and drinks causes the floor of the pool deck to become unreasonably slippery. Mopping the greasy floor only makes the floor even more slippery. Due to all the activity, Carnival requires its crew members to frequently inspect and dry the Lido Deck. Carnival knows that its pool deck is slippery when it is wet. Carnival also knows or should have known that water blends in with the floor on the open deck of the Lido Deck. Carnival knows that passengers may not be able to observe that the floor is wet or know the extent of the slipperiness of the greasy floor. The wet, unexpectedly slippery flooring is not an open and obvious hazardous condition for passengers. Because of all of that, Carnival requires its crew members to place yellow caution signs to warn passengers about wet and/or slippery floors.

13.     **DESCRIPTION OF THE INCIDENT**. On January 17, 2025, Carnival allowed the floor of the Lido Deck on board the *Carnival Vista* to remain in a dangerous condition for an extended period of time. Carnival failed to inspect and maintain the floors with sufficient regularity to prevent this large accumulation of water. Carnival failed to provide warnings to the passengers that this area was wet and slippery. Carnival failed to properly and sufficiently post signs, cones, or other warnings. Carnival failed to properly and sufficiently put blowers on the floor of the area

4

and to properly and sufficiently put towels down on the area to dry the floor. Carnival failed to block off the area and failed to guard over the area and use personnel to warn passengers. Carnival failed to reasonably train and/or supervise its crew to reasonably ensure that its slip and fall procedures, policies and/or programs were used and applied to this area of the ship.

14.     As a direct result, Shannon D. Cinelli-Blondia slipped and fell while walking on the Lido Deck onboard the *Carnival Vista* on January 17, 2025. At approximately 9:00am, Cinelli-Blondia was walking on the Lido Deck approximately 30-40 away from the pool and close to Guy's Burgers. Cinelli-Blondia was watching where she was walking. Despite this, the greasy wet substance throughout the floor was not readily apparent to Cinelli-Blondia before she slipped and fell. Suddenly, Cinelli-Blondia slipped and fell on the unexpectedly slippery floor. Cinelli-Blondia's legs went into a split with her right leg forward and her left leg back. Cinelli-Blondia attempted to get herself out of the split and rolled to her side and laid back. While lying on the floor, Cinelli-Blondia realized for the first time that the floor was wet and unreasonably slippery. The back of Cinelli-Blondia's head was wet all the way down to her legs. Passengers who saw Cinelli-Blondia's slip and fall came over with towels to place under her my head and to cover her.

15.     The incident was immediately reported to Carnival. Thereafter, Carnival crewmembers placed caution signs in the subject area and were seen cleaning and squeegeeing the subject area.

16.     Cinelli-Blondia was taken by stretcher to the medical infirmary on board the *Carnival Vista*. Cinelli-Blondia's left hip was dislocated and the left hip socket was broken. Instead of medically evacuating Cinelli-Blondia off the ship, *Carnival Vista*'s doctors attempted to manually manipulate the dislocated hip back into place but were unsuccessful. *Carnival Vista*'s doctors use bed sheets to keep Cinelli-Blondia's leg in a certain position. On January 18, 2025,

Cinelli-Blondia complained to *Carnival Vista*'s doctor that she could not feel her left leg. Instead of addressing the issue and/or medically evacuating Cinelli-Blondia off the ship for proper care and treatment, *Carnival Vista*'s doctors left Cinelli-Blondia in the same position where she could not feel her left leg. When Cinelli-Blondia requested to be medically evacuated off the ship for care and treatment, Carnival told her "no". As a direct result of Carnival's failure to medically evacuate Cinelli-Blondia off the ship and leaving Cinelli-Blondia's leg in a position for two days (from January 17, 2025 until January 19, 2025 when the ship returned to Port Canaveral for disembarkation) where Cinelli-Blondia could not feel her left leg, this caused Cinelli-Blondia to have severe and permanent nerve damage to her femoral nerve.

17.     **DAMAGES.** As a direct result of Carnival's negligence, Cinelli-Blondia slipped and fell and sustained severe and permanent injuries, including but not limited to a dislocated left hip, a broken left hip socket, and damage to her femoral nerve. These injuries are permanent and significantly affect the life and abilities of Cinelli-Blondia. These are extremely painful injuries and have caused and will continue to cause severe disability with permanent impairment. Cinelli-Blondia has suffered these losses in the past and will continue to suffer in the future. These injuries and damages include but are not limited to economic damages including medical, psychological them, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. These injuries and damages also include but are not limited to non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

18.     **NOTICE: PRIOR SIMILAR INCIDENTS**. Prior similar incidents show evidence that Carnival had notice of the dangerous condition here. Carnival documents prior slip

and falls, slipperiness, and water accumulations on its open decks in various ways, which may include prior shipboard meetings, logs, or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; prior slip testing of the floor surface. Examples of prior similar incidents known to date include the following:

(a) Sarita Pollard slipped, fell and was injured on the unreasonably wet, slippery, and/or hazardous flooring on the Lido Deck on the *Carnival Vista* on September 16, 2019. *Sarita Pollard v. Carnival Corporation,* Case Number 1:20-cv-24336. The flooring is the same as the flooring at issue in this case.

(b) Passenger Dan Fang Li slipped and fell on the Lido Deck on board the *Carnival Panorama* on September 24, 2023. *Dan Fang Li v. Carnival Corporation*, Case No.: 1:24-cv-22763. The open deck of the Lido Deck flooring on the *Carnival Panorama* is the same or substantially similar to the Lido Deck flooring on the *Carnival Vista.*

(c) Passenger Kathleen Harrison was injured on April 24, 2022 when she slipped and fell on the open deck of the Lido Deck on board the Carnival *Mardi Gras*. *Kathleen Harrison v. Carnival Corporation*, Case No.: 1: 23-cv-20633. The open deck of the Lido Deck flooring on the Carnival *Mardi Gras* is the same or substantially similar to the Lido Deck flooring on the *Carnival Vista.*

(d) Passenger William Hornsberger was injured on December 12, 2021, when he slipped and fell on the wet and slippery open deck floors on Deck 16 while on board the Carnival *Mardi Gras. William Hornsberger v. Carnival Corporation*, Case No. 1:22-cv-20204.

(e) Passenger Shelly Gersten was injured on January 15, 2022, when she slipped and fell on the wet slippery synthetic resin flooring on Deck 16 while on board the Carnival *Mardi Gras*. *Shelly Gersten v. Carnival Corporation*, Case No. 1:22-cv-23751.

(f) Passenger Ana Martinez slipped and fell and sustained injuries on August 5, 2021, when she slipped on the wet, slippery open deck steps near the Patio Pool area of the Carnival *Mardi Gras*. *Ana Martinez v. Corporation*, Case No. 1:22-cv-21626.

(g) Passenger Diana Rose Mayne was injured on January 24, 2022, when she slipped and fell on the wet and slippery flooring on Deck 18 while on board the Carnival *Mardi Gras*. *Diana Rose Mayne v. Corporation*, Case No. 1:22-cv-22617.

(h) Passenger Tammy Lopez was injured on October 6, 2019, when she slipped and fell on the wet and slippery open deck floors on the Lido deck on board the *Carnival Dream*. *Tammy Lopez v. Carnival Corporation*, Case No. 1:22-cv-20669. The Lido Deck flooring on the *Carnival Dream* is the same or substantially similar to the Lido Deck flooring on the *Carnival Vista.*

(i) Passenger Gini Hoffman was injured on December 24, 2018, when she slipped and fell on the wet and slippery open deck floors on the Lido deck on board the *Carnival Magic*. *Gini Hoffman v. Carnival Corporation*, Case No. 1:19-cv-25277. The Lido Deck flooring on the *Carnival Magic* is the same or substantially similar to the Lido Deck flooring on the *Carnival Vista.*

(j) Brenda Connell was a passenger on the *Carnival Horizon* on August 10, 2019 when she slipped and fell on the Lido Deck. *Brenda Connell v. Carnival Corporation*, Case Number 1:21-cv-23958. The Lido Deck flooring on the *Carnival Horizon* is the same or substantially similar to the Lido Deck flooring on the *Carnival Vista.*

(k) Passenger Sarah Williams was injured on June 4, 2017, when she slipped and fell on the wet and slippery open deck floors on the Lido deck on board the *Carnival Liberty. Sarah Williams v. Carnival Corporation.,* 440 F. Supp. 3d 1316 (S.D. Fla. 2020). The Lido Deck flooring on the *Carnival Liberty* is the same or substantially similar to the Lido Deck flooring on the *Carnival Vista*.

19.    **NOTICE: LENGTH OF TIME THE DANGEROUS CONDITION EXISTED**.
Additional evidence that Carnival had notice of the dangerous condition here is shown by the length of time that the condition existed. The pools and hot tubs/spas open around 7:00am and the subject incident occurred around 9:00am. For the wet area to be as large as it was, the condition existed for an extended period of time.

20.    **NOTICE: THE SIZE OF THE WET AREA**. Additional evidence that Carnival had notice of the dangerous condition here is shown by the size of the wet area. While lying on the floor, Cinelli-Blondia realized for the first time that the floor was wet and unreasonably slippery. The back of Cinelli-Blondia's head was wet all the way down to her legs. Cinelli-Blondia is 5'4". The wet area was at least 5 feet by 10 feet. Further, Cinelli-Blondia was walking on the Lido Deck approximately 30-40 away from the pool and close to Guy's Burgers at the time of the incident. For the wet area to be as large as it was, the condition existed for an extended period of time. Carnival knew or should have known of this condition because of its large size, its shape, its characteristics

and because the area of water existed on the pool deck for an extended, unreasonably long duration under the circumstances..

21.     **NOTICE: CAUTION SIGNS**. Additional evidence that Carnival had notice of the dangerous condition here is shown by the fact that Carnival regularly posts caution signs in the area about floors being slippery when wet.

22.     **NOTICE: CREW MEMBERS IN THE VICINITY OF THE SUBJECT AREA**. Additional evidence that Carnival had notice of the dangerous condition here is shown by the fact that crew members were in the subject area.

23.     **NOTICE: CORRECTIVE ACTION.** Additional evidence that Carnival had notice of the dangerous condition here is shown by the fact that Carnival crewmembers placed caution signs in the subject area and were seen cleaning and squeegeeing the subject area after the subject incident occurred.

24.     **NOTICE: TRAINING AND PROCEDURES AND TRAININGS.** Additional evidence that Carnival had notice of the dangerous condition here is shown by the fact that the cruise line has policies and procedures applicable to the subject area. Carnival has its "own the spill" policy as well as its "two-minute trainers". Carnival's policies and procedures require crew members to inspect and maintain the floors in a clean and dry condition. Carnival specifically trains its crew members to inspect and maintain the deck areas in a clean and dry condition. Carnival's trainings and procedures instruct crew members that its floors are slippery when wet which can cause passengers to slip and fall and get injured. Carnival also trains and created procedures which require crew members to place wet floor signs on walkways that become repetitively wet and/or are known to be wet. Carnival created this procedure for its crew because Carnival knows that without warnings, passengers may not know or be able to perceive that its

floors are wet. Carnival also knows that without warnings passengers may not know how slippery its floors are when wet. This shows that Carnival knew or should have known that its slippery wet deck floor walkways are not an open and obvious condition.

25. **NOTICE: ON-GOING, REPETIVE PROBLEM**. Additional evidence that Carnival had notice of the dangerous condition here is shown by the fact that this is an on-going, repetitive problem.

26. **NOTICE: VIOLATION OF INDUSTRY STANDARDS.** Carnival, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including Part C, Regulation 13, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.") Carnival's open decks are escape routes that Carnival must maintain in a safe condition. Upon information and belief, Carnival, at all relevant times, was aware of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to providing and maintaining safe walkways and floor materials. See, e.g., IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

27. **NOTICE: FUN TIMES DAILY.** Additional evidence that Carnival had notice of the dangerous condition here is shown by the fact that Carnival's Fun Times daily newspaper states, "use caution on outdoor decks as they can be slippery".

28. **NOTICE: DESIGN, SELECTION OF MATERIALS AND/OR**

**CONSTRUCTION**. Additional evidence that Carnival had notice of the dangerous condition here is shown by the fact that the cruise line designs, selects materials and constructs its ships including the API Syntheteak flooring in the open decks. Carnival participates with and controls the design, construction and selection of materials installed on its ships. Carnival has contracts with the shipyard which allows Carnival the right to inspect the design plans, materials, construction of its ships. Carnival may refuse payment, the ultimate control, should issues regarding design, selection of materials and construction is not resolved to Carnival's satisfaction. Carnival approved and ultimately chose the design, selection of materials and construction of the API Syntheteak flooring on the open decks of its ships, including aboard the *Carnival Vista.* Carnival has chosen and/or allowed the installation of the materials used in its open decks throughout the Carnival fleet for years.

**COUNT I**
**NEGLIGENT MAINTENANCE**

29.     The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28, above.

30.     This is an action against Carnival for its failure to maintain the floors with sufficient regularity to prevent a dangerous condition to remain on the floors of the Lido Deck near the Guy's Burgers Joint, where Cinelli-Blondia slipped and fell on January 17, 2025, onboard the *Carnival Vista,* in a safe manner.

31.     **DUTIES OWED BY CARNIVAL.** Carnival owes a duty to exercise reasonable care for the safety of its passengers, including Plaintiff. Carnival owes a duty as a common carrier to its passengers to maintain all areas of its ship. Carnival's duty of care includes maintaining the floors of the Lido Deck onboard the *Carnival Vista,* in a safe manner, including the subject area where Cinelli-Blondia slipped, fell, and was injured on January 17, 2025.

32.     Carnival had actual notice and/or constructive notice of the dangerous condition as alleged above and incorporated herein.

33.     **CARNIVAL BREACHED ITS DUTIES**. Carnival breached its duty to maintain the subject floors of the Lido Deck onboard the *Carnival Vista,* on January 17, 2025, in a safe manner. Carnival breached its duties to Cinelli-Blondia by its actions and conduct. Carnival failed to maintain and inspect the area where Cinelli-Blondia slipped and fell on January 17, 2025. Carnival allowed a slippery substance to accumulate in a highly trafficked area and did not clean, dry, or squeegee the subject floor. Carnival failed to inspect and dry the subject floor. Carnival failed to properly and sufficiently put blowers on the floor of the area and to properly and sufficiently put towels down on the area to dry the subject floor. Carnival allowed the floor to remain wet despite knowing that Passengers constantly and repetitively track water from these pools, spas and showers throughout the deck. Carnival also allowed the floor to remain in an unreasonably slippery condition despite knowing that passengers and crewmember traversing the subject area areas often drop and spill food and/or drinks on the floor. The buildup of the food and drinks causes the subject floor to become unreasonably slippery. Mopping the greasy floor only makes the floor even more slippery. Carnival also failed to comply with applicable industry standards, statutes, and/or regulations.

34.     **PROXIMATE CAUSE**. Carnival's failure to maintain the subject floors of the Lido Deck onboard the *Carnival Vista,* on January 17, 2025, in a safe manner, proximately caused Cinelli-Blondia's injuries. The Defendant's negligent maintenance allowed for the hazard for an extended period of time. Had Carnival properly maintained and inspected the subject area Cinelli-Blondia would have never slipped, fallen and been injured on the *Carnival Vista* on January 17, 2025.

35.     **DAMAGES**: As a result of Carnival's negligent maintenance, Plaintiff has and will suffer damages in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT II**
**VICARIOUS LIABILITY**
**FOR**
**CARNIVAL CREWMEMBERS'**
**NEGLIGENT MAINTENANCE**

36.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28, above.

37.     This is an action against Carnival for its vicarious liability for the active negligence of its employees/crewmembers – those being *Carnival Vista*'s Pool Attendants assigned to the subject area, the Pool and Deck Supervisor. These employees/crewmembers were negligent for their failure to maintain the subject floors of the Lido Deck onboard the *Carnival Vista* where Cinelli-Blondia slipped, fell, and was injured on January 17, 2025, in a safe condition.

38.     **DUTIES OWED**. At all times material herein, the employees/crewmembers on the *Carnival Vista* were the employees of Carnival. Carnival is therefore vicariously liable for the active negligence of its employees/crewmembers.

39.     Carnival's employees/crewmembers owes a duty to exercise reasonable care for the safety of the passengers on board the *Carnival Vista.* Carnival's employees/crewmembers duty of care includes maintaining the subject floors of the Lido Deck onboard the *Carnival Vista,* in a safe manner, including the subject area where Cinelli-Blondia was injured on January 17, 2025.

40.     **<u>NOTICE IS NOT REQUIRED FOR EMPLOYEE'S NEGLIGENT ACTS</u>**. Carnival is vicariously liable for negligent acts of its employees/crewmembers. A passenger is not required to establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees. *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1169-1170 (11th Cir. 2021). In this case Carnival's employees/crewmembers' negligent acts caused the Plaintiff's injuries.

41.     Notwithstanding that, Carnival had actual notice and/or constructive notice of the dangerous condition as alleged in the paragraphs above and incorporated herein.

42.     *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor should have known about the dangerous condition and/or could have easily observed the dangerous condition. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor should have known and/or could have easily observed the fact that there are passengers constantly and repetitively track water from these pools, spas and showers throughout the deck. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor should have known and/or could have easily observed the fact that there was an large wet area on the Lido Deck. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor should have known and/or could have easily observed the fact that the floors near the Guy's Burgers Joint was wet and unreasonably slippery. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor should have known that the Lido Deck is heavily

traversed during breakfast and that passengers and crewmembers traversing the Lido Deck often drop and spill food and drinks on the floor. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor could have inspected and cleaned the subject floors and but did not.

43.     **BREACH OF DUTIES.** *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor breached their duties to maintain the subject floors of the Lido Deck onboard the *Carnival Vista,* on January 17, 2025, in a safe manner. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor breached their duties to Cinelli-Blondia by their actions and conduct. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor failed to maintain and inspect the area where Cinelli-Blondia slipped, fell, and was injured on January 17, 2025. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor allowed the dangerous condition to exist. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor allowed a slippery substance to accumulate in a highly trafficked area and did not clean, dry, or squeegee the subject floor. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor failed to inspect and dry the subject floor. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor failed to properly and sufficiently put blowers on the floor of the area and to properly and sufficiently put towels down on the area to dry the subject floor. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor allowed the floor to remain wet despite knowing that Passengers constantly and repetitively track water from these pools, spas and showers throughout the deck. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor also allowed the floor to remain in an unreasonably slippery condition despite knowing that passengers

and crewmember traversing the subject area areas often drop and spill food and/or drinks on the floor. The buildup of the food and drinks causes the subject floor to become unreasonably slippery. Mopping the greasy floor only makes the floor even more slippery. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor also failed to comply with applicable industry standards, statutes, and/or regulations.

44.     **PROXIMATE CAUSE**. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor failure to maintain the subject area, specifically the floors of the Lido Deck near the Guy's Burgers Joint onboard the *Carnival Vista,* in a safe manner, proximately caused Cinelli-Blondia's injuries on January 17, 2025. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor negligent maintenance allowed for the hazard for an extended period of time. Had Carnival's employees/crewmembers properly maintained, inspected, cleaned, and dried the subject area, Cinelli-Blondia would have never been injured on *Carnival Vista* on January 17, 2025. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool & Deck Supervisor's negligent maintenance allowed for the hazard for an extended period of time. Had *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool & Deck Supervisor properly inspected the subject area, specifically the floors of the Lido Deck near the Guy's Burgers Joint onboard the *Carnival Vista,* Cinelli-Blondia would have never been injured on *Carnival Vista* on January 17, 2025. Had *Carnival Vista*'s Attendants assigned to the subject area and the Pool and Deck Supervisor properly cleaned and/or squeeged the subject area, specifically the floors of the Lido Deck near the Guy's Burgers Joint onboard the *Carnival Vista,* Cinelli-Blondia would have never slipped, fallen, and been injured on *Carnival Vista* on January 17, 2025.

45.     **DAMAGES**: As a result of *Carnival Vista's* Pool Attendants assigned to the subject

area and the Pool and Deck Supervisor negligent maintenance for which Carnival is vicariously liable for, Plaintiff has and will suffer damages in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

<u>**COUNT III**</u>
<u>**NEGLIGENT FAILURE TO WARN**</u>

46.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28, above.

47.     This is an action against Carnival for its negligent failure to warn passengers, including Cinelli-Blondia, of its hazards, risks or dangers on board the *Carnival Vista* including the floors of the Lido Deck near the Guy's Burgers Joint onboard the *Carnival Vista* where Cinelli-Blondia was injured on January 17, 2025.

48.     <u>**DUTIES OWED BY CARNIVAL.**</u> Carnival owes a duty to exercise reasonable care for the safety of its passengers. The Defendant owes a duty to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit. Carnival owes a duty of reasonable care under the circumstances. Carnival's duty of care includes warning of dangerous conditions on board the *Carnival Vista* including the floor of the Lido Deck near the

Guy's Burgers Joint onboard the *Carnival Vista* where Cinelli-Blondia was injured on January 17, 2025.

49.     Carnival had actual notice and/or constructive notice of the dangerous condition as alleged above and incorporated herein.

50.     **CARNIVAL BREACHED ITS DUTIES**. Carnival breached its duties to warn Cinelli-Blondia of the dangerous conditions on board the *Carnival Vista*, including where Cinelli-Blondia was injured on January 17, 2025. Carnival breached its duties to the Plaintiff by its actions and conduct. Carnival failed to provide necessary and proper warnings about the dangerous condition. Carnival failed to reasonably and regularly place signs, stickers, lights, and other visual or written notices on or near the subject area where Cinelli-Blondia was injured on January 17, 2025. Carnival failed to warn passengers about the dangerous conditions with signs or through verbal warnings. Carnival failed to install a "wet floor is extremely slippery" sign. Carnival failed to reasonably and regularly make audible announcements about the optical illusion/dangerous condition– the floor of the Lido Deck near the Guy's Burgers Joint onboard the *Carnival Vista*. Carnival also failed to comply with applicable industry standards, statutes, and/or regulations.

51.     **PROXIMATE CAUSE**. Carnival's failure to properly warn Cinelli-Blondia of the dangerous conditions on board the *Carnival Vista* including the floors of the Lido Deck near the Guy's Burgers Joint onboard the *Carnival Vista* where Cinelli-Blondia slipped, fell and was injured on January 17, 2025, proximately caused the Plaintiff's injuries. Had Carnival properly warned Cinelli-Blondia of the dangerous condition, Cinelli-Blondia would have been aware of the dangerous condition and never would have slipped, fallen, and been injured on board the *Carnival Vista* on January 17, 2025.

52.     **DAMAGES**. As a result of Carnival's negligent failure to warn, Plaintiff has and

will suffer damages in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT IV**
**VICARIOUS LIABILITY**
**FOR**
**CARNIVAL CREWMEMBERS'**
**NEGLIGENT FAILURE TO WARN**

53.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28, above.

54.     This is an action against Carnival for its vicarious liability for the active negligence of its employees/crewmembers – those being *Carnival Vista*'s Pool Attendants assigned to the subject area and the Pool and Deck Supervisor. These employees/crewmembers were negligent for their failure to warn about the dangerous condition– the slippery floor of the Lido Deck near the Guy's Burgers Joint onboard the *Carnival Vista* where Cinelli-Blondia was injured on January 17, 2025.

55.     **DUTIES OWED**. At all times material herein, the employees/crewmembers on the *Carnival Vista* were the employees of Carnival. Carnival is therefore vicariously liable for the active negligence of its employees/crewmembers.

56.     Carnival's employees/crewmembers owes a duty to exercise reasonable care for the safety of the passengers on board the *Carnival Vista*. Carnival's employees/crewmembers owe a duty to warn of dangers known to the Carnival's employees/crewmembers in places where the passenger is invited to or may reasonably be expected to visit. Carnival's employees/crewmembers owes a duty of reasonable care under the circumstances. Carnival's employees/crewmembers duty of care includes warning of dangerous conditions on board the *Carnival Vista* including the floors of the Lido Deck near the Guy's Burgers Joint onboard the *Carnival Vista* where Cinelli-Blondia was injured on January 17, 2025.

57.     **NOTICE IS NOT REQUIRED FOR EMPLOYEE'S NEGLIGENT ACTS**. Carnival is vicariously liable for negligent acts of its employees/crewmembers. A passenger is not required to establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees. *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1169-1170 (11th Cir. 2021). In this case Carnival's employees/crewmembers' negligent acts caused the Plaintiff's injuries.

58.     Notwithstanding that, Carnival had actual notice and/or constructive notice of the dangerous condition as alleged in the paragraphs above and incorporated herein.

59.     *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor should have known about the dangerous condition and/or could have easily observed the dangerous condition. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor should have known and/or could have easily observed the fact that there are passengers constantly and repetitively track water from these pools, spas and showers throughout the deck. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor should have known and/or could have easily observed the fact that there was an large wet area on the

Lido Deck. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor should have known and/or could have easily observed the fact that the floors near the Guy's Burgers Joint was wet and unreasonably slippery. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor should have known that the Lido Deck is heavily traversed during breakfast and that passengers and crewmembers traversing the Lido Deck often drop and spill food and drinks on the floor. *Carnival Vista's* Pool Attendants assigned to the subject area and the Pool and Deck Supervisor could have warned about the dangerous condition but did not.

60.     **BREACH OF DUTIES.** *Carnival Vista*'s Pool Attendants assigned to the subject area and the Pool and Deck Supervisor breached their duties to warn the Plaintiff of the dangerous conditions on board the *Carnival Vista*, including the slippery floor of the Lido Deck near the Guy's Burgers Joint, where Cinelli-Blondia was injured on January 17, 2025. *Carnival Vista*'s Pool Attendants assigned to the subject area and the Pool and Deck Supervisor breached their duties to the Plaintiff by their actions and conduct. *Carnival Vista*'s Pool Attendants assigned to the subject area and the Pool and Deck Supervisor failed to warn passengers including the Plaintiff about the dangerous condition on board the *Carnival Vista*, including the slippery floor of the Lido Deck near the Guy's Burgers Joint, where Cinelli-Blondia was injured on January 17, 2025. *Carnival Vista*'s Pool Attendants assigned to the subject area and the Pool and Deck Supervisor failed to provide written and/or verbal warnings to passengers including the Plaintiff about the dangerous condition on board the *Carnival Vista*, including the slippery floors of the Lido Deck near the Guy's Burgers Joint, where Cinelli-Blondia was injured on January 17, 2025. *Carnival Vista*'s Pool Attendants assigned to the subject area and the Pool and Deck Supervisor failed to reasonably and regularly place signs, stickers, lights, and other visual or written notices on or near the subject area where the Plaintiff was injured on board the *Carnival Vista* January 17, 2025.

*Carnival Vista*'s Pool Attendants assigned to the subject area and the Pool and Deck Supervisor failed to reasonably and regularly make audible announcements about the dangerous condition on board the *Carnival Vista*, including the slippery floors of the Lido Deck near the Guy's Burgers Joint, where Cinelli-Blondia was injured on January 17, 2025. *Carnival Vista*'s Pool Attendants assigned to the subject area and the Pool and Deck Supervisor failed to reasonably and regularly place signs, stickers, lights, and other visual or written notices on or near the subject area where the Plaintiff was injured on January 17, 2025. *Carnival Vista*'s Pool Attendants assigned to the subject area and the Pool and Deck Supervisor failed to cordon off the open decks or place physical barriers on the floors or otherwise to prevent access to the slippery surface. *Carnival Vista*'s Pool Attendants assigned to the subject area and the Pool and Deck Supervisor failed to comply Carnival's policies and procedures. *Carnival Vista*'s Pool Attendants assigned to the subject area and the Pool and Deck Supervisor also failed to comply with applicable industry standards, statutes, and/or regulations.

61.    **PROXIMATE CAUSE.** *Carnival Vista*'s Pool Attendants assigned to the subject area and the Pool and Deck Supervisor's failure to properly warn the Plaintiff of the dangerous condition on board the *Carnival Vista*- the slippery floor of the Lido Deck near the Guy's Burgers Joint, proximately caused the Plaintiff's injuries on January 17, 2025. Had *Carnival Vista*'s Pool Attendants assigned to the subject area and the Pool and Deck Supervisor properly warned the Plaintiff about the dangerous condition, the Plaintiff would have been aware of the dangerous condition and therefore would have never been injured on board the *Carnival Vista* on January 17, 2025.

62.    **DAMAGES.** As a result of *Carnival Vista*'s Pool Attendants assigned to the subject area and the Pool and Deck Supervisor's negligent failure to warn for which Carnival is vicariously

liable for, Plaintiff has and will suffer damages in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT V
## NEGLIGENT TRAINING PERSONNEL

63.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28, above.

64.     This is an action against Carnival for its negligent training of its shipboard crew members.

65.     **DUTIES OWED BY CARNIVAL.** Carnival owes a duty to exercise reasonable care for the safety of its passengers. Carnival owes a duty of reasonable care under the circumstances. Carnival owes a duty as a common carrier to its passengers to train its crew members to properly inspect, maintain and warn passengers about dangers known to Carnival where Carnival invites or reasonably expects passengers to go. Carnival's duty of care includes training its crew members to inspect, maintain and warn passengers about dangerous conditions on board the *Carnival Vista* including where Cinelli-Blondia was injured on January 17, 2025.

66.     Carnival had actual notice and/or constructive notice of the dangerous condition as

alleged above and incorporated herein.

67. Carnival should have become aware that it had failed to properly train its crew members given that the crew member(s) failed to inspect and maintain the subject area.

68. Carnival should have become aware that it had failed to properly train its crew members given that the crew member(s) were failing to properly warn passengers of the dangerous conditions on board the *Carnival Vista* including where Cinelli-Blondia was injured on January 17, 2025.

69. **CARNIVAL BREACHED ITS DUTIES.** Carnival breached its duty of care owed to Cinelli-Blondia and was negligent by failing to reasonably train its crewmembers to inspect, clean, dry and warn passengers of the dangerous conditions on board the *Carnival Vista* including the subject area where Cinelli-Blondia was injured on January 17, 2025. Carnival failed to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of slippery floors and the dangerousness of slippery floors.. Carnival failed to ensure the implementation or operation of its training programs described above and incorporated herein.

70. At the time Cinelli-Blondia slipped and fell on the floors of the Lido Deck near the Guy's Burgers Joint, the crew member that was responsible for warning, maintaining and inspecting that area failed to do so. Because that crew member was not properly trained, that crew member failed to properly and adequately warn passengers, like Cinelli-Blondia, of the dangerous conditions on board the *Carnival Vista,* including the slippery floors of the Lido Deck near the Guy's Burgers Joint where Cinelli-Blondia was injured on January 17, 2025. Because that crew member was not properly trained, that crew member also failed to properly inspect and maintain the subject area.

71.     **PROXIMATE CAUSE.** Carnival's failure to properly train its crew members proximately caused Cinelli-Blondia's injuries. Had Carnival properly trained its crew members to inspect, maintain and warn passengers about the dangerous conditions on board the *Carnival Vista,* including the subject area where Cinelli-Blondia slipped and fell, the crewmember would have inspected, maintain and warned Cinelli-Blondia about the dangerous condition. Had Carnival properly trained its crew members, the dangerous condition would not have existed. Had Carnival properly trained its crew members, Cinelli-Blondia would have been aware of the dangerous condition and Cinelli-Blondia would never have slipped, fallen, and been injured on January 17, 2025.

72.     **DAMAGES.** As a result of Carnival's negligent training, Plaintiff has and will suffer damages in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT VI**
**NEGLIGENT DESIGN, CONSTRUCTION**
**AND SELECTION OF MATERIALS**

73.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28, above.

74.    This is an action against Carnival for its negligent design, construction and selection of materials for the subject area– the floor of the Lido Deck near the Guy's Burgers Joint onboard the *Carnival Vista*.

75.    **DUTIES OWED BY CARNIVAL.** Carnival owes a duty to exercise reasonable care for the safety of its passengers. Carnival owes a duty of reasonable care under the circumstances. Carnival's duty to design, construct and select materials for all areas and features of its vessels, including the subject area, is part of Carnival's duty of reasonable care under the circumstances. Carnival had a duty to design the subject area including the flooring in a reasonably safe manner and in accordance with industry standards.

76.    Carnival has all of its ships, including the *Carnival Vista*, custom made to its own design and specifications. Carnival participated in and/or approved of the design of the subject area, including the floors of the Lido Deck near the Guy's Burgers Joint onboard the *Carnival Vista*. Carnival participated in and/or approved of the selection of the materials for the subject area, including the floors of the Lido Deck near the Guy's Burgers Joint onboard the *Carnival Vista.* Carnival participated in and/or approved of the installation of the materials for the subject area including the subject flooring. Carnival chose to install this same and/or similar flooring throughout its fleet. Carnival continues to repair, modify and/or install the same and/or similar flooring on all its ships, including the *Carnival Vista.* At all times Carnival had the ultimate control over the design and construction of the *Carnival Vista*. Carnival had the right to inspect both the designs on paper and the design and construction at the yard. Carnival had the right under its contract with the yard to approve or reject the design, construction and selection of all materials to construct all aspects of the *Carnival Vista* including the subject area and flooring. Carnival had the right to reject any and all items, designs and construction. Carnival holds the ultimate control under

their contract with the yard to withhold payment if an item or design is rejected or at issue and not resolved. Carnival approved of the design, construction, and selection of materials of the subject area demonstrated by the fact that Carnival has operated and maintained the ship continuously since on or about 2015.

77.     Carnival had actual notice and/or constructive notice of the dangerous condition as alleged above and incorporated herein.

78.     Carnival knew or should have known that the subject area, including the slippery floor of the Lido Deck near the Guy's Burgers Joint onboard the *Carnival Vista* was unreasonably dangerous.

79.     Carnival knew or should have known of the dangerousness of the slippery floors of the Lido Deck near the Guy's Burgers Joint onboard the *Carnival Vista* since the ship was built in 2016.

80.     **CARNIVAL BREACHED ITS DUTIES**. Carnival breached its duty of care owed to Cinelli-Blondia and was negligent by approving, designing, constructing, and/or selecting, the flooring for the walkways in the Lido Deck on board the on board the *Carnival Vista*. Carnival failed to design, construct, select and/or approve materials that complied with industry standards. The design and/or materials Carnival approved, selected and/or used to construct the walkways in the Lido Deck, including near the Guy's Burgers Joint on board the *Carnival Vista,* were unreasonably dangerous. Carnival could have selected different flooring material but chose not to.

81.     **PROXIMATE CAUSE.** Carnival's negligent design, construction and selection of the flooring for the walkways in the Lido Deck onboard the *Carnival Vista* proximately caused Cinelli-Blondia's injuries. Had Carnival properly designed, constructed and selected the flooring for the walkways in the Lido Deck onboard the *Carnival Vista,* Cinelli-Blondia would never have

slipped, fallen and been injured on January 17, 2025.

82.     **DAMAGES.** As a result of Carnival's negligent design, construction and selection of materials, Plaintiff has and will suffer damages in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT VII**
**NEGLIGENT FAILURE TO PROVIDE PROPER AND ADEQUATE MEDICAL CARE AND TREATMENT**

83.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28, above.

84.     This is an action against Carnival for its failure to provide proper and adequate medical care and treatment to Cinelli-Blondia onboard the *Carnival Vista* on January 17, 2025.

85.     **DUTIES OWED BY CARNIVAL.** Carnival owes a duty to exercise reasonable care for the safety of its passengers.. That duty of care included the duty to provide Plaintiff with prompt and appropriate medical care for the  injuries Cinelli-Blondia sustained aboard the subject ship on January 17, 2025, including a dislocated left hip, a broken left hip socket, and damage to her femoral nerve. .

86.   **CARNIVAL BREACHED ITS DUTIES**. Carnival breached its duty of care by failing to administer the medical care and treatment that was necessary, reasonable, and which complied with the standard of care. Those breaches include, *inter alia*:

    a.  Failing to properly assess, diagnose, monitor and/or follow Plaintiff's injuries, including but not limited to a dislocated left hip, a broken left hip socket, and damage to her femoral nerve;

    b.  Failing to provide any further care, treatment, and/or follow up evaluations of Cinelli-Blondia's left hip injuries, including ignoring Plaintiff's complaints that she could not feel her left leg in the position in which the medical personnel had placed her leg and maintaining her leg in that position for two days between January 17, 2025 and January 19, 2025.;

    c.  Failing to recognize and/or appreciate the gravity and time-sensitive nature of Cinelli-Blondia's condition;

    d.  Failing to accurately describe, characterize, and/or advise Carnival's shoreside on-call physician, captain, staff captain, officers and/or the Carnival personnel who assist, approve and/or participate in the treatment and care of passenger patients such as Cinelli-Blondia;

    e.  Failing to prescribe that Cinelli-Blondia undergo radiological studies (such as a CT scan or MRI) to determine the extent Cinelli-Blondia's left hip injuries and so Cinelli-Blondia could undergo a reduction under anesthesia;

    f.  Failing to adequately investigate the circumstances and extent of Cinelli-Blondia's injury.

87.     **PROXIMATE CAUSE**. Carnival's failure to provide prompt and appropriate medical care proximately caused Cinelli-Blondia to suffer severe and permanent injuries. Specifically, Plaintiff's severe injuries, including but not limited to a dislocated left hip, a broken left hip socket, and damage to her femoral nerve..

88.     **DAMAGES**. As a direct and proximate result of Carnival's negligence, Plaintiff has suffered damages in the past that will continue into the future as described above.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT VIII
## VICARIOUS LIABILITY FOR CARNIVAL'S EMPLOYEES/AGENTS' NEGLIGENT FAILURE TO PROVIDE PROPER AND ADEQUATE MEDICAL CARE AND TREATMENT

89.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28, above.

90.     This is an action against Carnival for its vicarious liability for the active negligence of its employees/crewmembers – those being Dr. Farzana Sayed and the other *Carnival Vista* medical personnel who treated Cinelli-Blondia for the injuries she sustained as a result of the slip and fall that occurred on the Lido Deck near the Guy's Burgers Joint onboard the *Carnival Vista* where Cinelli-Blondia was injured on January 17, 2025.

91.   **DUTIES OWED.** At all times material herein, the employees/crewmembers on the *Carnival Vista* were the employees of Carnival. Carnival is therefore vicariously liable for the active negligence of its employees/crewmembers

92.   Carnival's employees/crewmembers owed Plaintiff a duty to exercise reasonable care under the circumstances. That duty of care included the duty to provide Plaintiff with prompt and appropriate medical care for the left hip injuries Cinelli-Blondia sustained aboard the subject ship on January 17, 2025.

93.   **NOTICE IS NOT REQUIRED FOR EMPLOYEE'S NEGLIGENT ACTS.** Carnival is vicariously liable for negligent acts of its employees/crewmembers. A passenger is not required to establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees. *Yusko v. NCL (Bahamas), Ltd.,* 4 F.4th 1164, 1169-1170 (11th Cir. 2021). In this case Carnival's employees/crewmembers' negligent acts caused the Plaintiff's injuries.

94.   Notwithstanding that, Carnival had actual notice and/or constructive notice of the dangerous condition as alleged in the paragraphs above and incorporated herein.

95.   Dr. Farzana Sayed and the other *Carnival Vista* medical personnel who treated Cinelli-Blondia for the injuries she sustained as a result of the subject incident were the apparent agents of Carnival.

96.   **BREACH OF DUTIES.** Dr. Farzana Sayed and the other *Carnival Vista* medical personnel who treated Cinelli-Blondia for the injuries she sustained as a result of the subject incident breached their duty of care by failing to administer the medical care and treatment that was necessary, reasonable, and which complied with the standard of care. Those breaches include, *inter alia*:

a. Failing to properly assess, diagnose, monitor and/or follow Plaintiff's injuries including but not limited to a dislocated left hip, a broken left hip socket, and damage to her femoral nerve;

b. Failing to provide any further care, treatment, and/or follow up evaluations of Cinelli-Blondia's left hip injuries, including Carnival Vista's medical staff failure to address Plaintiff's complaints including that she could not feel her leg, which caused Plaintiff to suffer damage to her femoral nerve;

c. Failing to recognize and/or appreciate the gravity and time-sensitive nature of Cinelli-Blondia's condition;

d. Failing to accurately describe, characterize and/or advise Carnival's shoreside on-call physician, captain, staff captain, officers, and/or the Carnival personnel who assist, approve and/or participate in the treatment and care of passenger patients such as Cinelli-Blondia;

e. Failing to prescribe that Cinelli-Blondia undergo radiological studies (such as a CT scan or MRI) to determine the extent Cinelli-Blondia's left hip injuries and so Cinelli-Blondia could undergo a reduction under anesthesia ;
   ;

f. Failing to adequately investigate the circumstances and extent of Cinelli-Blondia's injuries.

97.    Instead of rendering appropriate care, advising Cinelli-Blondia on the proper follow up care for the injuries, and/or ordering her evacuated off the ship, Dr Farzana Sayed and/or *Carnival Vista's* medical personnel attempted to manually manipulate Cinelli-Blondia's dislocated hip back into place but were unsuccessful. Dr Farzana Sayed and/or *Carnival Vista's* medical

personnel used bed sheets to keep Cinelli-Blondia's leg in a certain position. Dr Farzana Sayed and/or *Carnival Vista's* medical personnel ignored Plaintiff when she complained that she could not feel her leg, leaving Cinelli-Blondia in the same position where she could not feel her left leg for two days (from January 17, 2025 until January 19, 2025 when the ship returned to Port Canaveral for disembarkation). Furthermore, Cinelli-Blondia was denied a medical evacuation off the ship for care and treatment.

98.     **PROXIMATE CAUSE.** As a direct and proximate result of the negligence of Dr Farzana Sayed and/or *Carnival Vista's* medical personnel, Cinelli-Blondia suffered severe and permanent injuries. Specifically, Plaintiff's left hip injuries were not properly treated. Dr Farzana Sayed and/or *Carnival Vista's* medical personnel attempted but failed to manually manipulate the dislocated hip back into place and instead, immobilized Plaintiff's hip using bed sheets in a position that caused Plaintiff to not feel her leg for two days, causing Plaintiff to suffer damage to her femoral nerve.

99.     **DAMAGES.** As a direct and proximate result of Carnival's negligence, Plaintiff has suffered damages in the past that will continue into the future, as described above.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

<u>COUNT IX</u>
<u>NEGLIGENT FAILURE TO PROMPTLY MEDICALLY EVACUATE
SHANNON D. CINELLI-BLONDIA OFF THE SHIP FOR
MEDICAL CARE AND TREATMENT</u>

100.     The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28, above.

101.     This Count seeks to hold Carnival directly liable for its negligence in failing to evacuate Plaintiff off the cruise ship on January 17, 2025.

102.     **<u>DUTIES OWED BY CARNIVAL</u>.** At all times material to this action, Carnival, as well as its employees, agents, and/or apparent agents, owed Plaintiff a duty to exercise reasonable care under the circumstances. That duty of care included the duty to provide Plaintiff with prompt and appropriate medical care for the injuries she sustained aboard the subject ship on January 17, 2025.

103.     Carnival knew or should have known that Plaintiff's injuries were severe, time-sensitive and progressive in nature. was advised of Plaintiff's severe condition through Dr. Sayed, who called and emailed Carnival's on-call shoreside physicians and medical personnel to advise them of same.  Once Carnival learned of the severity of Plaintiff's condition it should have taken measures to evacuate her off the ship and/or divert the ship's course to secure prompt, appropriate medical care that would have prevented the devastating injuries she ultimately suffered.

104.     **<u>CARNIVAL BREACHED ITS DUTIES</u>.** Carnival, acting through the commanding officers aboard the subject ship and Carnival's shoreside medical "care team," breached its duty of care by, *inter alia*:

> a.   Failing to make the arrangements necessary to have Cinelli-Blondia immediately evacuated off of the subject ship on January 17, 2025, and transported to a shoreside medical facility capable of providing necessary

treatment, diagnostic imaging, and/or medications that were not available aboard the subject ship;

    b.   Failing to divert the course of the subject ship to ensure that it was in port sooner so that Plaintiff could be taken to a shoreside medical facility capable of providing necessary treatment, diagnostic imaging, and/or medications that were not available aboard the subject ship;

    c.   Denying Plaintiff's request to be medically evacuated so she could receive adequate medical treatment for her hip injuries.

105.   **PROXIMATE CAUSE.** As a direct and proximate result of Carnival's negligence, Cinelli-Blondia suffered severe and permanent injuries. Specifically, left hip injuries were not properly treated. *Carnival Vista's* medical personnel attempted but failed to manually manipulate the dislocated hip back into place and instead, immobilized Plaintiff's hip using bed sheets in a position that caused Plaintiff to not feel her leg for two days, causing Plaintiff to suffer damage to her femoral nerve.

106.   **DAMAGES.** As a direct and proximate result of Carnival's negligence, Plaintiff has suffered damages in the past that will continue into the future, as described above.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General

Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT X
## VICARIOUS LIABILITY FOR CARNIVAL'S EMPLOYEES/AGENTS' NEGLIGENT FAILURE TO PROMPTLY MEDICALLY EVACUATE SHANNON D. CINELLI-BLONDIA OFF THE SHIP FOR MEDICAL CARE AND TREATMENT

105.    The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28, above.

106.    This is an action against Carnival for its vicarious liability for the active negligence of its employees/crewmembers – those being Dr. Farzana Sayed and/or *Carnival Vista's* medical personnel, as well as Carnival's commanding officers aboard the subject ship and Carnival's shoreside medical "care team." These employees/crewmembers were negligent for their failure to evacuate Plaintiff off the cruise ship on January 17, 2025.

107.    At all times material herein, the employees/crewmembers on the *Carnival Vista* were the employees of Carnival. Carnival is therefore vicariously liable for the active negligence of its employees/crewmembers.

108.    **DUTIES OWED.** Carnival's employees/crewmembers owe a duty to exercise reasonable care for the safety of the passengers on board the *Carnival Vista*. That duty of care included the duty to provide Plaintiff with prompt and appropriate medical care for the left hip injuries she sustained aboard the subject ship on January 17, 2025.

109.    **NOTICE IS NOT REQUIRED FOR EMPLOYEE'S NEGLIGENT ACTS.** Carnival is vicariously liable for negligent acts of its employees/crewmembers. A passenger is not required to establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees. *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1169-1170 (11th Cir. 2021). In this case Carnival's employees/crewmembers' negligent acts caused Plaintiff's injuries.

110.    Notwithstanding that, Carnival had actual notice and/or constructive notice of the dangerous condition as alleged in the paragraphs above and incorporated herein.

111.    Dr. Farzana Sayed and/or *Carnival Vista's* medical personnel attempted and failed to manually manipulate the dislocated hip back into place. Dr. Farzana Sayed stated in the her medical notes, that three different manipulation techniques were employed to no avail and that Cinelli-Blondia would require a closed reduction under anesthesia performed by an orthopedic physician. Despite this, *Carnival Vista's* employees/crewmembers failed to medically evacuate Cinelli-Blondia so that she could receive proper treatment.

112.    **BREACH OF DUTIES.** Dr. Farzana Sayed and/or *Carnival Vista's* medical personnel, as well as Carnival's commanding officers aboard the subject ship and Carnival's shoreside medical "care team" breached their duties to Plaintiff, *inter alia:*

  a.   Failing to make the arrangements necessary to have Cinelli-Blondia immediately evacuated off of the subject ship on January 17, 2025, and transported to a shoreside medical facility capable of providing necessary treatment, diagnostic imaging, and/or medications that were not available aboard the subject ship;

  b.   Failing to divert the course of the subject ship to ensure that it was in port sooner so that Plaintiff could be taken to a shoreside medical facility capable of providing necessary treatment, diagnostic imaging, and/or medications that were not available aboard the subject ship;

  c.   Denying Plaintiff's request to be medically evacuated so she could receive adequate medical treatment for her hip injuries.

113.    **PROXIMATE CAUSE.** Dr. Farzana Sayed and/or *Carnival Vista's* medical personnel, as well as Carnival's commanding officers aboard the subject ship and Carnival's

shoreside medical "care team" failure to promptly medically evacuate the Plaintiff off the ship for medical care and treatment caused Plaintiff's to suffer severe and permanent injuries. Had Dr. Farzana Sayed and/or *Carnival Vista's* medical personnel, as well as Carnival's commanding officers aboard the subject ship and Carnival's shoreside medical "care team" promptly medically evacuated the Plaintiff, the Plaintiff would have received adequate medical treatment, diagnostic imaging, and/or medications that were not available aboard the subject ship, and therefore would have not suffered damage to her femoral nerve as a result of her fall on board the Carnival Vista on January 17, 2025.

114.    **DAMAGES.** As a result of Dr. Farzana Sayed and/or *Carnival Vista's* medical personnel, as well as Carnival's commanding officers aboard the subject ship and Carnival's shoreside medical "care team"  failure to promptly medically evacuate the Plaintiff off the ship for medical care and treatment, which Carnival is vicariously liable for, Plaintiff has and will suffer damages in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

The Plaintiffs hereby demand Trial by Jury of all issues.


Dated this 19th day of  December 2025.


                                  Respectfully submitted,

                              By:  *s/ Lisa C. Goodman*
                                      **JOHN H. HICKEY**, **ESQ.** (FBN 305081)
                                      hickey@hickeylawfirm.com
                                      **LISA C. GOODMAN, ESQ.** (FBN 118698)
                                      lgoodman@hickeylawfirm.com
                                      federalcourtfilings@hickeylawfirm.com
                                      **HICKEY LAW FIRM, P.A.**
                                      Douglas Entrance Office Parc
                                      Executive Tower
                                      804 South Douglas Road, Suite 373
                                      Coral Gables, FL 33134
                                      Telephone: (305) 371-8000
                                      Facsimile: (305) 371-3542
                                      *Counsel for the Plaintiff*